**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

TRUSTEES OF THE BUILDING TRADES
EDUCATIONAL BENEFIT FUND, THE
BUILDING TRADES ANNUITY BENEFIT
FUND, BUILDING TRADES WELFARE
BENEFIT FUND, and BUILDING TRADES
PENSION FUND,

                    Plaintiffs,             **REPORT AND RECOMMENDATION**

    v.                            17-cv-03448 (DRH) (ST)

CULVER ELECTRIC, LLC,

                    Defendant.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Plaintiffs trustees ("Trustees") of the Building Trades Educational Benefit Fund, the Building Trades Annuity Benefit Fund, the Building Trades Welfare Benefit Fund, and the Building Trades Pension Fund (collectively, the "Funds") commenced this action on June 8, 2017 against Culver Electric, LLC ("Defendant"), pursuant to the Labor Management Relations Act of 1947 ("LMRA") and the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant has failed to answer or otherwise respond to Trustees' complaint, and Trustees have filed a Motion for Default Judgment against Defendant. The Honorable Denis R. Hurley referred Trustees' Motion to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, the Court recommends that Trustees' Motion for Default Judgment be GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

**I.    Factual Background**

1

Trustees are fiduciaries as defined by ERISA, and the Funds are employee benefit plans and multiemployer plans as defined by ERISA. Compl. ¶ 5, Dkt. No. 1. Defendant is an employer, as defined by ERISA, in an industry affecting commerce, within the meaning of the LMRA. *Id.* ¶ 8. Defendant is party to a collective bargaining agreement ("CBA") with Local 363, United Electrical Workers of America, IUJAT. *Id.* ¶ 6. Pursuant to the CBA, the Funds can collect from Defendant contributions that include payments for fringe benefits. *Id.* ¶ 6. Accordingly, Defendant is required to submit reports that state the hours worked by each of its employees covered by the CBA, and to remit to the Funds contributions based upon those hours. *Id.* ¶ 11.

Defendant failed to remit contributions for the period of September 1, 2013 through December 31, 2017, the value of which contributions have been determined by audit. Aff. of Albert Alimenia ("Alimenia Aff.") ¶¶ 3-4, Dkt. No. 25. Defendant made payments toward its delinquency "[o]n or about December 2019 and January 2019." *Id.* ¶ 5. Defendant also failed to comply with an audit for the period of January 1, 2018 through February 19, 2020. *Id.* ¶ 7. As permitted by the CBA's collection policy, Trustees' auditor estimated the amount of contributions that Defendant owed for the period of January 1, 2018 through December 31, 2019. Aff. of Alan Rossi ("Rossi Aff.") ¶ 10, Dkt. No. 26; Suppl. Aff., Dkt. No. 30.

## II. Procedural History

Trustees commenced this action on June 8, 2017. *See generally* Compl. In their Complaint, Trustees make four claims for relief. *See Id.* ¶¶ 10-32. First, Trustees seek "contribution reports and unpaid benefit contributions in the minimum of $64,145.92 plus liquidated damages, interest, court costs, and attorneys' fees." *Id.* ¶ 16. The minimum amount owed reflects "fringe benefit contributions due and owing under the [CBA] and in accordance

with the Trust Indentures . . . for the period of November 1, 2016 through March 1, 2017." *Id.* ¶ 13. Second, Trustees seek a "minimum amount of $64,145.92 in unpaid contributions plus liquidated damages, interest, reasonable attorneys' fees, costs and disbursements . . . pursuant to Section 502 of ERISA." *Id.* ¶ 23. Third, Trustees seek "additional contributions and/or delinquency charges [that] may become due and owing" during this action, plus interest. *Id.* ¶ 27. Finally, fourth, Trustees seek a "permanent injunction enjoining [Defendant] from any further or future violations of this or subsequent collective bargaining agreements" with Trustees. *Id.* ¶ 32.

After a period during which Trustees audited Defendant and attempted to resolve this matter with Defendant, Trustees requested a certificate of default be entered against Defendant on November 7, 2019. *See* Status Report, Dkt. No. 7; Status Report, Dkt. No. 9; Status Report, Dkt. No. 10; Status Report, Dkt. No. 20; *see generally* Req. for Certificate of Default, Dkt. No. 22. The Clerk of Court then entered default against Defendant on November 13, 2019. *See generally* Entry of Default, Dkt. No. 23.

Trustees filed a Motion for Default Judgment on February 25, 2020. *See generally* First Mot. Default J., Dkt. No. 24. Without specifically referencing the four discrete claims for relief in the Complaint, the documents supporting Trustees' Motion specify Trustees are entitled to judgment "in the amount of $1,063,951.40 plus interest in the amount of $84,498.72; liquidated damages in the amount of $212,790.72; attorney's fees in the amount of $2,600.00; audit fees in the amount of $4,934.82 and fees and costs in the amount of $477.75 for a total amount of $1,369,252,90."[1] Affirm in Supp. of Mot. for Default ¶ 7 ("Affirm"), Dkt. No. 27. The Court requested Trustees provide additional information with regard to Trustees' calculations of estimated unpaid contributions and interest on unpaid contributions. Order dated October 13,

---

[1] The Court notes that the claim for injunctive relief in Trustees' Complaint is absent from the Motion for Default Judgment.

2020. Trustees submitted a Supplemental Affidavit, in which Trustees' auditor explained its calculations, as well as a Revised Statement of Damages.[2] *See* Suppl. Aff.; Revised Statement of Damages, Dkt. No. 30-6. The latter seeks damages as follows:

| Item | Amount Sought |
|------|---------------|
| Principal benefit contribution amount due | $1,390,980.19 |
| Interest calculated at 6.75% | $93,891.16 |
| Liquidated damages calculated at 20% of benefit contribution | $278,196.00 |
| Reasonable attorney's fees pursuant to CBA | $2,600.00 |
| Audit interest | $39,721.00 |
| Audit fee | $4,934.83 |
| Filing fee | $400.00 |
| Process server fee | $77.75 |
| **Total** | **$1,810,800.93** |

Revised Statement of Damages.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Mktg. Devs., Ltd. v. Genesis*

---

[2] Trustees appear to have omitted the second page from their Supplemental Affidavit. *See generally* Suppl. Aff. The Court has not requested Trustees re-submit the affidavit, as all requested information related to unpaid contributions and interest is included on subsequent pages.

*Imp. & Exp., Inc.*, No. 08-CV-3168 (CBA) (CLP), 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

On a motion for default judgment, the Court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to issue a default judgment, the Court has the responsibility to ensure that plaintiff's "allegations establish [defendant's] liability as a matter of law." *Id.*; *accord City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citation omitted).

## DISCUSSION

### I.   This Court has Jurisdiction

This Court has federal question subject matter jurisdiction over this action given that Trustees' claims have been brought pursuant to ERISA and the LMRA. Compl. ¶ 2; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."); *Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 840-41 (1989) ("[W]hether a case is one arising under federal law, in the sense of the jurisdictional statute, must be determined from what necessarily appears in the plaintiff's statement of his own claims . . . ." (brackets, ellipses, internal citations, and quotation marks omitted)).

This Court also has personal jurisdiction over Defendant, as it is an entity "duly organized and existing pursuant to the laws of the State of New York with its principal place of business located at 380 Court Street, Brooklyn, New York 11231." Compl. ¶ 9; *Metro. Life Ins.*

*V. Robertson-Ceco Corp.*, 94 F.3d 560, 568 (2d Cir. 1996) ("[A] court's general jurisdiction . . . is based on the defendant's general business contacts with the forum . . . and permits a court to exercise its power in a case where the subject matter of a suit is unrelated to those contacts." (citation omitted)).

## II.    Defendant has Defaulted

Despite being properly served by Trustees on June 19, 2017, Defendant failed answer or otherwise respond to Trustees' Complaint. Affirm ¶¶ 5-6; *see* Summons Returned Executed, Dkt. No. 6. Trustees filed a Motion for Entry of Default against Defendant on November 7, 2019, pursuant to which the Clerk of Court entered a Certificate of Default against Defendant on November 13, 2019. *See* Req. for Certificate of Default; Clerk's Entry of Default. Thus, per the standard provided by Federal Rule of Civil Procedure 55(a), Defendant is properly considered to have admitted all factual allegations in the Complaint and is subject to this Court's assessment of his liability thereby.

## III.    Defendant is Liable

Per Section 515 of ERISA,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Under the terms of the CBA, Defendant is obligated to remit contributions to the Funds. Compl. ¶ 11. Trustees allege that Defendant is delinquent in these contributions. Alimenia Aff. ¶¶ 3-5. Defendant's failure to make these contributions to the Funds constitutes a violation of Section 515 of ERISA.

Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . .

6

may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Under the LMRA, an employer may be held liable for failing to remit dues or make contributions to a labor organization as required by a CBA. *See, e.g.*, *Bricklayers Inc. & Welfare Fund v. McGovern & Co.*, LLC, No. 17-CV-6067 (SJ) (ST), 2019 WL 2271942, at *3 (E.D.N.Y. Mar. 6, 2019), *adopted as modified by* 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019); *Bricklayers Inc. & Welfare Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-CV-3940 (DLI) (ST), 2017 WL 9481016, at *10 (E.D.N.Y. Jan 12, 2017), *adopted by* 2017 WL 1093192 (E.D.N.Y. Mar. 23, 2017). As stated above, Trustees claim that Defendant failed to remit contributions to the Funds. Alimenia Aff. ¶¶ 3-5. Defendant's alleged failure constitutes a breach of the CBA and thus establishes Defendant's liability under the LMRA.

## IV.    Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). If liability is established as to a defaulting defendant, the plaintiff must then establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). However, the Court is not required to hold a hearing if the party seeking damages submits "[d]etailed affidavits and documentary evidence" in support of its request. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993) (citing *Action S.A. v. Marc*

7

*Rich & Co.* 951 F.2d 504, 508 (2d Cir. 1991); *Fustok v. Conti-Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

Trustees support their request for damages with evidence including: the duly sworn Affidavit of Albert Alimenia, the manager of the Funds; the duly sworn Affidavit of Alan Rossi of CostaRothbort CPSs LLC ("Costa"), Trustees' auditor; the audit prepared by Costa for the period of September 1, 2013 through December 31, 2017, with supporting documents (Rossi Aff., Ex. A, Dkt. No. 26-1); the duly sworn Supplemental Affidavit prepared by Costa; a duly sworn Affirmation of Trustees' counsel; copies of the CBA and related agreements for the relevant time period, including wage and benefit rate schedules (Alimenia Aff., Exs. A, B, C, D, E, Dkt. Nos. 25-1, 25-2, 25-3, 25-4, 25-5); and the CBA's collection policy (Rossi Aff., Ex. C, Dkt. No. 26-3).

Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA. Per Section 502, these damages include: (1) unpaid contributions, (2) interest on unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs, and (5) such other legal or equitable relief as the Court deems appropriate. 29 U.S.C. § 1132(g)(2).

### a. Unpaid Contributions

#### i. September 1, 2013 – December 31, 2017

Costa determined that Defendant under-contributed to the Funds by $286,937.40 during the period of September 1, 2013 through December 31, 2017. Rossi Aff. ¶¶ 4, 8. In performing the audit, Costa "compared the hours recorded on [Defendant's] payroll records on a week by week basis, with its remittance reports as well as contribution payments to the Funds for the corresponding weeks. [Costa] also reviewed the CBA and the applicable rate schedules." *Id.* ¶ 6.

Due to flood damage, Defendant was unable to provide Costa with payroll records for the periods of September 1, 2013 to December 27, 2014 and December 20, 2015 to January 23, 2016. Rossi Aff., Ex. A at 2. For these periods, Trustees' auditor estimated the hours worked by Defendant's employees based on Defendant's quarterly payroll tax returns. *Id.*

Costa supported its findings with annual schedules it prepared. *Id.* At 4-7. The schedules listed the following for each employee covered by the CBA: the employee's hours according to payroll records, noting the amount of contributions owed to each of the Funds based on those hours and the CBA rate sheets; the employee's hours as stated in Defendant's remittance report and the corresponding contributions that Defendant remitted to each of the Funds; and the difference between the employee's hours as reported and as stated in the payroll records, accompanied by the corresponding difference between the contributions Defendant paid and owed to the Funds. *Id.* Based on this data, Costa also provided a summary schedule that showed total contributions that Defendant owed to the Funds. *Id.* at 3. Courts in this district have accepted similar materials from auditors as proof of unpaid contributions owed by employers. *See, e.g.*, *Trs. of Pavers and Road Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. VIF Corp.*, No. CV 2014-4923 (SJ) (MDG), 2015 WL 5664149, at *3 (E.D.N.Y. Sept. 4, 2015) (relying on audit report and accompanying schedules showing unpaid hours per employee), *adopted by* 2015 WL 5679943 (E.D.N.Y. Sept. 24, 3015); *Bd. Of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting, Inc.*, No. 12-CV-0399 (KAM) (RER), 2013 WL 802034, at *2 (E.D.N.Y. Jan 16, 2013) (relying on audit report and accompanying schedule of omissions), *adopted by* 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013). These documents show that, during the audit period, Defendant made certain overpayments in the total amount of

$3,296.75, which were not reflected in the $286,937.40 owed by Defendant. *Id.* Per the collection policy of the CBA, an employer seeking a refund for an overpayment identified in an audit "must submit a request to the Boards of Trustees in writing." Rossi Aff. Ex. C at 6.

The documents submitted by Costa appear to be consistent with one another, and Defendant has not disputed their accuracy. Further, there is no evidence that Defendant requested a refund for the overpayments identified in the audit. Thus, the Court finds that Defendant owes Trustees $286,937.40 for unpaid contributions from September 1, 2013 through December 31, 2017.

### ii.  January 1, 2018 – December 31, 2019

"Damages based on estimated unpaid contributions are authorized under Section 502 of ERISA." *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 219 (E.D.N.Y. 2016). Defendant failed to comply with an audit for the period beginning January 1, 2018. Alimenia Aff. ¶ 7. Under such circumstances, the collection policy of the CBA permits the Trustees to estimate the amount of contributions owed to the Funds. Rossi Aff., Ex. C at 3. In relevant part, the collection policy states:

> In the event an employer has not submitted a remittance report by the Due Date or
> has failed to fully comply with a Payroll Audit . . . , for the purpose of
> determining the amount of Delinquent Contributions owed to the Funds, the
> Board of Trustees shall presume that the employer is obligated to contribute for
> the greatest number of hours for which the employer was required to contribute in
> any month during the immediately preceding twelve (12) consecutive month
> period, plus 10% . . . .

*Id.*

Costa estimates that Defendant owes the Funds $1,104,042.79 in unpaid contributions for the period from January 1, 2018 to December 31, 2019. Suppl. Aff. ¶ 10. In the sworn Supplemental Affidavit, Costa explains that this estimate was

10

> derived from taking the greatest number of hours for which the employer was required to contribution in any month during the immediately preceding twelve (12) consecutive month period for, in their case, both Private rate and Prevailing rate hours, then multiplying those amounts by 24, the equivalent of the two year estimated period, and then adding an additional 10% on top of that amount. The greatest number of Private hours in one month during the preceding twelve (12) months was 386 hours, with an average benefit package of $8.655, and the greatest number of Prevailing hours in one month during the preceding twelve (12) months was 911.5 hours, with an average benefit package of $42.215.

*Id.* Costa applied the formula prescribed by the collection policy and the Court finds no error in Costa's calculations.

Accordingly, Defendant owes the Funds $286,937.40 from the audit period and $1,104,042.79 for the period from January 1, 2018 to December 31, 2019. The Supplemental Affidavit and Revised Statement of Damages do not seem to account for the $46,362.40 that Defendant has already paid toward its delinquency. *See* Suppl. Aff. ¶ 13; Revised Statement of Damages; Alimenia Aff. ¶ 5. After subtracting this amount, the Court respectfully recommends Trustees be awarded damages of $1,344,617.79 for unpaid contributions.

### b. Interest

Trustees seek interest on unpaid contributions in accordance with the collection policy. Alimenia Aff. ¶ 6; *see* 29 U.S.C. § 1132(g)(2)(B). Per the CBA's collection policy, interest on the delinquent contributions accrues "beginning on the Contribution Due Date" and is calculated "at the prime rate as stated in the Federal Reserve Statistical Release . . . and applicable on the Contribution Due Date plus two percent (2%)." Rossi Aff., Ex. C at 3. Interest is calculated "from the Contribution Due Date, per month, until the date paid." *Id.* This formula suggests that interest is calculated and compounded on a monthly basis, on the date each month that a contribution is due but goes unpaid.

Costa does not adhere to this formula. Rather, Costa calculates interest once for each calendar year covered by the audit (2014, 2015, 2016, and 2017).[3] Suppl. Aff. at 4. Costa also compounds interest four times on an annual basis, once for each calendar year covered by the audit, and then a final time for the period of January through July of 2018, when the audit was completed. *Id.* Separately, Costa appears to calculate post-audit interest by simply multiplying the total amount of unpaid contributions (without accounting for Defendant's payments toward its delinquency) by 6.75%. *See* Revised Statement of Damages. Costa explains, "[t]he prime rate at the time of filing [Trustees'] Motion for Default in February of 2020 was 4.75% with the adding of 2% the interest rate at the time of the filing the Motion was 6.75%." Suppl. Aff. at 3. In neither the Rossi Affidavit nor the Supplemental Affidavit does Costa explain why it diverged from the formula. Nor does Costa explain why on four occasions it chose to compound interest annually, on one occasion it chose to compound interest after about seven months, and on a final occasion it chose not to compound interest at all.

Given that the auditor does not calculate interest in accordance with the collection policy's formula, the auditor's own method appears to compound interest inconsistently, and the auditor appears not to account for Defendant's payment toward its delinquency when calculating interest, this Court recommends Trustees' request for interest on unpaid contributions be denied without prejudice. *See Jacobson v. Action Elevator, Inc.*, No. 03-CV-2476 (ARR) (CLP), 2007 WL 1011173, at *6 (E.D.N.Y. Mar. 30, 2007) (denying plaintiff interest sought pursuant to stipulation, where plaintiff failed to properly apply formula prescribed by stipulation). Trustees

---

[3] The supporting materials show that Defendant was not delinquent in its payments for the first four months of the audit, September through December of 2013, so no interest accrued during that period. *See* Rossi Aff., Ex. A at 3; Suppl. Aff. at 4.

may submit to the Court interest calculated in adherence to the CBA's collection policy, or otherwise explain Costa's method for calculating interest.

### c.  Liquidated Damages

Trustees are also entitled to liquidated damages. 29 U.S.C. § 1132(g)(2)(C). According to the collection policy, the "amount of liquidated damages shall be the greater of: (a) Interest on delinquent Contributions determined in accordance with [the collection policy]; or (b) 20% of the delinquent Contributions." Rossi Aff., Ex. C at 8. As discussed above, Trustees' supporting materials do not adhere to the collection policy's formula for computing interest. Regardless, Trustees seek liquidated damages calculated at 20% of unpaid contributions. Revised Statement of Damages. The Revised Statement of Damages, however, calculates liquidated damages without first subtracting Defendant's payments toward delinquency from the unpaid contributions. *See id.* After accounting for Defendant's payments toward delinquency, 20% of the total unpaid contributions, $1,344,617.79, is approximately $268,923.56. Accordingly, the Court respectfully recommends that Trustees be granted $268,923.56 in liquidated damages, pending any adjustment that might result should Trustees supplement their proof of interest and show that interest due is greater than 20% of the unpaid contributions.

### d.  Attorney's Fees and Costs

Where a plaintiff seeking to recover delinquent contributions prevails, ERISA requires the Court to award reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2)(D).

### i.  Audit Costs

Trustees seek $4,934.83 for audit fees. Revised Statement of Damages. Requests for audit fees must be supported by "records . . . sufficient to allow the court to determine the reasonableness of the audit costs." *Morin v. Nu-Way Plastering, Inc.*, No. CV 03-405 (LDW)

(ARL), 2005 WL 3470371, at *4 (E.D.N.Y. Dec. 19, 2005). Here, Trustees' auditor explains that the fees requested result from 54.25 hours of work at a rate of $90 per hour, plus $52.33 for travel expenses. Rossi Aff. ¶ 8. Further, Costa provides a timesheet for its work performed on this matter. *See* Rossi Aff., Ex. B, Dkt. No. 27-2. After reviewing the record, the Court respectfully recommends that Trustees be awarded $4,934.83 in audit fees.

### ii. Attorney's Fees

"Courts in this circuit assess fee applications using the 'lodestar method,' under which a reasonable hourly rate is multiplied by a reasonable number of hours expended." *Gesualdi v. Mack Excavation & Trailer Serv., Inc.,* No. CV 09-2502 (KAM) (JO), 2010 WL 985269, at *6 (E.D.N.Y. Feb. 12, 2010), *adopted as modified by* 2010 WL 985294 (E.D.N.Y. Mar. 15, 2010). The reasonable hourly rate is the "rate a paying client would be willing to pay," based on the "prevailing hourly rate in the community . . . where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany Bd. Of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (internal quotation marks, brackets omitted). A party seeking an award of attorney's fees also "must support its application by submitting contemporaneous time records that detail, for each attorney, the date, the hours expended, and the nature of the work done." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F.Supp.2d 156, 163 (E.D.N.Y. 2008) (internal quotation marks omitted). Additionally, a court assessing an attorney's fee application must determine the reasonableness of the hours expended by counsel. *See, e.g.*, *Bakery and Confectionery Union and Indus. Int'l Pension Fund, et al. v. Ges Bake Shop, Inc.*, No. 13-CV-728 (FB) (CLP), 2014 WL 1159821, at *9 (E.D.N.Y. Mar. 21, 2014).

Trustees seek attorney's fees in the amount of $2,600. Affirm ¶¶ 7, 12. This amount is based on ten and a half hours of work by Trustees' counsel, Danielle M. Carney, who bills at a

rate of $200 per hour, plus a $500 fee for a demand letter. Affirm ¶¶ 12, 14. An hourly rate of $200 is a reasonable fee for Trustees' counsel, who is an associate at her firm and has "more than twenty (20) years of experience prosecuting claims on behalf of various ERISA benefit funds." Affirm ¶ 1, 13; *see, e.g.*, *Trs. of Leather Goods, Handbags, and Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at *11-12 (E.D.N.Y. Aug. 2, 2019) (finding $250 per hour reasonable for senior associate attorney in ERISA matter), *adopted by* 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019); *Finkel v. Millennium Fire Servs., LLC*, 2019 WL 1605186, at *4 (E.D.N.Y. Mar. 29, 2019) (finding $275 per hour reasonable for associate attorney in ERISA matter); *Div. 1181 Amalgamated Transit Union—N.Y. Emps.' Pension Fund v. D & A Bus Co., Inc.*, 270 F.Supp.3d 593, 621-23 (E.D.N.Y. 2017) (finding $200 per hour reasonable for associate attorney in ERISA matter); *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. FMC Constr. LLC*, 2014 WL 1236195, at *11 (E.D.N.Y. Mar. 25, 2014) (same). Further, Trustees' counsel provides a timesheet and details the dates on which she performed work for Trustees, the nature of the work she performed for Trustees, and the number of hours she spent on each task she performed for Trustees. Affirm ¶ 12; Affirm, Ex. D, Dkt. No. 27-4. Most of the time counsel billed was spent preparing Trustees' Motion for Default Judgment and preparing, filing, and sending the Complaint, with the remainder of the time spent on the Affidavit of Service and the Request for Entry of Default. *See id.* After reviewing the record, the Court finds Trustees' request for attorney's fees reasonable.

For the foregoing reasons, this Court respectfully recommends that Trustees be granted attorney's fees of $2,600.

### iii.  Reasonable Costs

Trustees request $400.00 for a filing fee and $77.75 for a process server fee. Revised Statement of Damages; *see* Affirm, Ex. C, Dkt. No. 27-3. The Court finds these costs to be reasonable and respectfully recommends that Trustees be awarded $477.75 in costs. *See Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs).

### e.   Other Legal or Equitable Relief

Trustees' Proposed Judgment seeks an "audit of the books and records of [Defendant] for the period September 1, 2013 to December 31, 2017." Proposed Judgment, Dkt. No. 30-5. Trustees do not mention this request elsewhere in the materials supporting the Motion for Default Judgment. Further, Trustees have already audited Defendant for this period. Rossi Aff. ¶¶ 4-5. Accordingly, this Court respectfully recommends that Trustees' request be denied.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Trustees' Motion for Default Judgment be GRANTED IN PART AND DENIED IN PART. The Court recommends Trustees be awarded $1,344,617.79 in unpaid contributions, $268,923.56 in liquidated damages, $4,934.83 in audit fees, $2,600 in attorney's fees, and $477.75 in costs, for a total damage award of $1,621,553.93.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).


**SO ORDERED.**


                                            /s/
                                 Steven L. Tiscione
                                 United States Magistrate Judge
                                 Eastern District of New York


Dated: Central Islip, New York
        November 3, 2020