**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

TRUSTEES OF THE BUILDING TRADES
EDUCATIONAL BENEFIT FUND, THE
BUILDING TRADES ANNUITY BENEFIT
FUND, BUILDING TRADES WELFARE
BENEFIT FUND, and BUILDING TRADES
PENSION FUND,

                    Plaintiffs,         **REPORT AND RECOMMENDATION**

    v.                                        17-cv-03448 (DRH) (ST)

CULVER ELECTRIC, LLC,

                    Defendant.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

       Plaintiffs trustees ("Trustees") of the Building Trades Educational Benefit Fund, the Building Trades Annuity Benefit Fund, the Building Trades Welfare Benefit Fund, and the Building Trades Pension Fund (collectively, the "Funds") commenced this action on June 8, 2017 against Culver Electric, LLC ("Defendant"), pursuant to the Labor Management Relations Act of 1947 ("LMRA") and the Employee Retirement Income Security Act of 1974 ("ERISA"). Now before the Court is Trustees' Motion for Renewed Damages. The Honorable Denis R. Hurley referred the Motion to the undersigned to issue a Report and Recommendation. For the reasons set forth below, the Court recommends that Trustees' Motion for Renewed Damages be GRANTED.

**I. BACKGROUND**

       The Court assumes familiarity with the factual and procedural background of this case. Importantly, the Court notes that Defendant is party to a collective bargaining agreement ("CBA") with Local 363, United Electrical Workers of America, pursuant to which the Funds

1

can collect from Defendant contributions that include payments for fringe benefits. Compl. ¶ 6, Dkt. No. 1; *see* Aff. Albert Alimenia, Exs. A – E, Dkt. Nos. 25-1 – 25-5.

On November 3, 2020, the undersigned issued a Report and Recommendation as to Trustees' Motion for Default Judgment. *See generally* R. & R. re. Mot. Default J., Dkt. No. 31. That Report and Recommendation recommended finding Defendant liable, under ERISA and LMRA, for failing to make contributions to the Funds, and partially granting Trustees' request for damages. *See id.* It recommended denying without prejudice Trustees' request for interest on Defendant's unpaid contributions because, among other reasons, Trustees' interest calculations were not made in accordance with the CBA's collection policy. *Id.* at 11-13. Trustees objected to the Report and Recommendation's conclusion as it related to the interest award. *See* Obj. R. & R., Dkt. No. 33. On November 24, 2020, the Honorable Denis R. Hurley issued an Order adopting in part this Court's Report and Recommendation. *See generally* Order, Dkt. No. 34. Specifically, the Order adopted the Report and Recommendation on the issue of Defendant's liability. *Id.* at 1-2. Noting that "[e]rrors made in a party's moving papers are not an appropriate basis for an objection by the moving party," the Order denied the Motion's request for damages without prejudice, permitting Trustees to submit a renewed motion for damages. *Id.* On December 10, 2020, Trustees moved the Court to grant them damages against Defendant in the amount of $1,702,907.63. Notice Mot. Renewed Damages, Dkt. No. 35. In connection with this Motion, Trustees submitted an Affidavit for Damages prepared by their auditor, CostaRothbort CPAs LLC ("Costa"), as well as an Affirmation in Support of the Motion by their attorney, Danielle M. Carney of Barnes, Iaccarino & Shepherd, LLP. *See generally* Aff. Damages ("Aff."), Dkt. No. 36; Affirm Supp. Pl.'s Renewed Mot. Damages ("Affirm"), Dkt. No. 37.

## II. DISCUSSION

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). If liability is established as to a defaulting defendant, the plaintiff must then establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). However, the Court is not required to hold a hearing if the party seeking damages submits "[d]etailed affidavits and documentary evidence" in support of its request. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993) (citing *Action S.A. v. Marc Rich & Co.* 951 F.2d 504, 508 (2d Cir. 1991); *Fustok v. Conti-Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

Per Section 502 of ERISA, the damages that are recoverable for an employer's failure to remit contributions include: (1) unpaid contributions; (2) interest on unpaid contributions; (3) liquidated damages (4) reasonable attorney's fees and costs; and (5) such other legal or equitable relief as the Court deems appropriate. 29 U.S.C. § 1132(g)(2).

### a. Unpaid Contributions

#### i. September 1, 2013 – December 31, 2017

Through an audit, Costa determined that Defendant under-contributed to the Funds by $286,937.40 during the period of September 1, 2013 through December 31, 2017. Aff. ¶ 7. In

3

performing the audit, Costa "compared the hours recorded on [Defendant's] payroll records on a week by week basis, with its remittance reports as well as contribution payments to the Funds for the corresponding weeks. [Costa] also reviewed the CBA and the applicable rate schedules." *Id.* ¶ 6. Due to flood damage, Defendant was unable to provide Costa with payroll records for the periods of September 1, 2013 to December 27, 2014 and December 20, 2015 to January 23, 2016. Aff., Ex. A at 1. For these periods, Trustees' auditor estimated the hours worked by Defendant's employees based on Defendant's quarterly payroll tax returns. *Id.*

Costa supported its findings with annual schedules it prepared. *Id.* at 4-7. The schedules listed the following for each employee covered by the CBA: the employee's hours according to payroll records, noting the amount of contributions owed to each of the Funds based on those hours and the CBA rate sheets; the employee's hours as stated in Defendant's remittance report and the corresponding contributions that Defendant remitted to each of the Funds; and the difference between the employee's hours as reported and as stated in the payroll records, accompanied by the corresponding difference between the contributions Defendant paid and owed to the Funds. *Id.* Based on this data, Costa also provided a summary schedule that showed total contributions that Defendant owed to the Funds. *Id.* at 3. Courts in this district have accepted similar materials from auditors as proof of unpaid contributions owed by employers. *See, e.g.*, *Trs. of Pavers and Road Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. VIF Corp.*, No. CV 2014-4923 (SJ) (MDG), 2015 WL 5664149, at *3 (E.D.N.Y. Sept. 4, 2015) (relying on audit report and accompanying schedules showing unpaid hours per employee), *adopted by* 2015 WL 5679943 (E.D.N.Y. Sept. 24, 3015); *Bd. Of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting, Inc.*, No. 12-CV-0399 (KAM) (RER), 2013

4

WL 802034, at *2 (E.D.N.Y. Jan 16, 2013) (relying on audit report and accompanying schedule of omissions), *adopted by* 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013). These documents also show that, during the audit period, Defendant made certain overpayments in the total amount of $3,296.75, which are not reflected in the $286,937.40 owed by Defendant. Aff., Ex. A at 3. Per the collection policy of the CBA, an employer seeking a refund for an overpayment identified in an audit must submit a request to the Boards of Trustees in writing. *See* Aff., Ex. C at 6-8. Costa received no such request from Defendant. Aff. ¶ 4.

The documents submitted by Costa appear to be consistent with one another, and Defendant has not disputed their accuracy. Further, there is no evidence that Defendant requested a refund for the overpayments identified in the audit. Thus, the Court finds that Defendant owes Trustees $286,937.40 for unpaid contributions from September 1, 2013 through December 31, 2017.

### ii. January 1, 2018 – December 31, 2019

"Damages based on estimated unpaid contributions are authorized under Section 502 of ERISA." *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 219 (E.D.N.Y. 2016). As indicated in a document that Trustees submitted with their Motion for Default Judgment, Defendant failed to comply with an audit for the period beginning January 1, 2018. *See* Aff. Albert Alimenia ¶ 7, Dkt. No. 25. The collection policy of the CBA permits the Trustees to estimate the amount of contributions owed to the Funds. Aff., Ex. C at 3. In relevant part, the collection policy states:

> In the event an employer has not submitted a remittance report by the Due Date or has failed to fully comply with a Payroll Audit . . . , for the purpose of determining the amount of Delinquent Contributions owed to the Funds, the Board of Trustees shall presume that the employer is obligated to contribute for the greatest number of hours for which the employer was required to contribute in any month during the immediately preceding twelve (12) consecutive month period, plus 10% . . . .

5

*Id.*

Costa estimates that Defendant owes the Funds $1,053,044.15 in unpaid contributions for the period from January 1, 2018 to December 31, 2019, after accounting for payments Defendant made to Trustees during this period. *See* Aff. ¶¶ 10-11. Costa explains that this estimate was

> derived from taking the greatest number of hours for which the employer was required to contribution in any month during the immediately preceding twelve (12) consecutive month period for, in their case, both Private rate and Prevailing rate hours, then multiplying those amounts by 24, the equivalent of the two year estimated period, and then adding an additional 10% on top of that amount. The greatest number of Private hours in one month during the preceding twelve (12) months was 386 hours, with an average benefit package of $8.655, and the greatest number of Prevailing hours in one month during the preceding twelve (12) months was 911.5 hours, with an average benefit package of $42.215.

*Id.* ¶ 10. Defendant made a payment of $23,256.80 in December 2018 and a payment of $23,105.60 in January 2019. *Id.* ¶ 11. Accounting for these payments, Costa applied the formula prescribed by the collection policy. The Court finds no error in Costa's calculations.

Accordingly, Defendant owes the Funds $286,937.40 from the audit period and $1,053,044.15 for the period from January 1, 2018 to December 31, 2019. The Court thus respectfully recommends Trustees be awarded damages of $1,339,981.55 for unpaid contributions. *See id.* ¶ 11.

    **b. Interest**

Trustees are entitled to interest on unpaid contributions in accordance with the collection policy. 29 U.S.C. § 1132(g)(2)(B). Per the CBA's collection policy, interest on the delinquent contributions accrues "beginning on the Contribution Due Date" and is calculated "at the prime rate as stated in the Federal Reserve Statistical Release . . . and applicable on the Contribution Due Date plus two percent (2%)." Aff., Ex. C at 2. Interest is calculated "from the Contribution Due Date, per month, until the date paid." *Id.* In the Affidavit submitted with Trustees' Motion

6

for Renewed Damages, Costa applies this formula to calculate the interest due on payments owed from the audit period and from the period of January 1, 2018 to December 31, 2019. *See* Aff. ¶¶ 12-13. By Costa's calculations, Defendant owes $15,884.72 in interest on unpaid contributions from the audit period. *Id.* ¶ 12. The Court agrees. By Costa's calculations, Defendant owes $71,032.47 in interest on unpaid calculations from the period of January 1, 2018 to December 31, 2019. *Id.* ¶ 13. The Court's calculations differ to a very small degree, and the Court finds Defendant owes $71,032.75 for this same period.[1] Accordingly, the Court recommends Trustees be awarded interest in the total amount of $86,917.47.

### c. Liquidated Damages

Trustees are also entitled to liquidated damages. *See* 29 U.S.C. § 1132(g)(2)(C). According to the collection policy, the "amount of liquidated damages shall be the greater of: (a) Interest on delinquent Contributions determined in accordance with [the collection policy]; or (b) 20% of the delinquent Contributions." Aff., Ex. C at 8. Trustees seek liquidated damages calculated at 20% of unpaid contributions, which amounts to $267,996.31. Affirm ¶ 8. As discussed above, interest due on the unpaid contributions is $86,917.47. Because $267,996.31 is greater than $86,917.47, it is appropriate to award liquidated damages in accordance with Trustees' request. Accordingly, the Court respectfully recommends that Trustees be awarded $267,996.31 in liquidated damages.

### d. Attorney's Fees and Costs

Where a plaintiff that seeks to recover delinquent contributions prevails, ERISA requires the Court to award reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2)(D).

---

[1] This minor variation results from differences between Costa's and the Court's calculations of interest for the following months: March of 2018; July through December of 2018; and August through October of 2019.

i.  **Audit Costs**

Trustees seek $4,934.83 for audit fees.  Aff. ¶ 8; Affirm ¶ 7.  Requests for audit fees must be supported by "records . . . sufficient to allow the court to determine the reasonableness of the audit costs."  *Morin v. Nu-Way Plastering, Inc.*, No. CV 03-405 (LDW) (ARL), 2005 WL 3470371, at *4 (E.D.N.Y. Dec. 19, 2005).  Here, Trustees' auditor explains that the fees requested result from 54.25 hours of work at a rate of $90 per hour, plus $52.33 for travel expenses.  Aff. ¶ 8.  Further, Costa provides a timesheet for its work performed on this matter.  *See* Aff., Ex. B, Dkt. No. 36-2.  After reviewing the record, the Court respectfully recommends that Trustees be awarded $4,934.83 in audit fees.

ii.  **Attorney's Fees**

"Courts in this circuit assess fee applications using the 'lodestar method,' under which a reasonable hourly rate is multiplied by a reasonable number of hours expended."  *Gesualdi v. Mack Excavation & Trailer Serv., Inc.,* No. CV 09-2502 (KAM) (JO), 2010 WL 985269, at *6 (E.D.N.Y. Feb. 12, 2010), *adopted as modified by* 2010 WL 985294 (E.D.N.Y. Mar. 15, 2010).  The reasonable hourly rate is the "rate a paying client would be willing to pay," based on the "prevailing hourly rate in the community . . . where the district court sits."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany Bd. Of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (internal quotation marks, brackets omitted).  A party seeking an award of attorney's fees also "must support its application by submitting contemporaneous time records that detail, for each attorney, the date, the hours expended, and the nature of the work done."  *Finkel v. Omega Commc'n Servs., Inc.*, 543 F.Supp.2d 156, 163 (E.D.N.Y. 2008) (internal quotation marks omitted).  Additionally, a court assessing an attorney's fee application must determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *Bakery and*

*Confectionery Union and Indus. Int'l Pension Fund, et al. v. Ges Bake Shop, Inc.*, No. 13-CV-728 (FB) (CLP), 2014 WL 1159821, at *9 (E.D.N.Y. Mar. 21, 2014).

Trustees seek attorney's fees in the amount of $2,600.  Affirm ¶¶ 9, 11.  This amount is based on ten and a half hours of work by Trustees' counsel, Danielle M. Carney, who bills at a rate of $200 per hour, plus a $500 fee for a demand letter.  *Id.*  An hourly rate of $200 is reasonable for Trustees' counsel, who is an associate at her firm and has "more than twenty (20) years of experience prosecuting claims on behalf of various ERISA benefit funds."  *Id.* ¶¶ 1, 10; *see, e.g.*, *Trs. of Leather Goods, Handbags, and Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at *11-12 (E.D.N.Y. Aug. 2, 2019) (finding $250 per hour reasonable for senior associate attorney in ERISA matter), *adopted by* 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019); *Finkel v. Millennium Fire Servs., LLC*, 2019 WL 1605186, at *4 (E.D.N.Y. Mar. 29, 2019) (finding $275 per hour reasonable for associate attorney in ERISA matter); *Div. 1181 Amalgamated Transit Union—N.Y. Emps.' Pension Fund v. D & A Bus Co., Inc.*, 270 F.Supp.3d 593, 621-23 (E.D.N.Y. 2017) (finding $200 per hour reasonable for associate attorney in ERISA matter); *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. FMC Constr. LLC*, 2014 WL 1236195, at *11 (E.D.N.Y. Mar. 25, 2014) (same).  Further, Trustees' counsel provides a timesheet that details the dates on which she performed work for Trustees, the nature of the work she performed for Trustees, and the number of hours she spent on each task she performed for Trustees.  Affirm, Ex. B, Dkt. No. 37-2.  Most of the time counsel billed was spent preparing Trustees' Motion for Default Judgment and preparing and filing the Summons and Complaint, with the remainder of the time spent arranging for service of the Complaint and

9

preparing the Request for Entry of Default. *See id.*; Affirm ¶ 9. After reviewing the record, the Court finds Trustees' request for attorney's fees to be reasonable.

For the foregoing reasons, this Court respectfully recommends that Trustees be granted attorney's fees of $2,600.

### iii.  Reasonable Costs

Trustees request $400.00 for a filing fee and $77.75 for a process server fee. Affirm ¶ 13; *see* Affirm, Ex. C, Dkt. No. 37-3. The Court finds these costs to be reasonable and respectfully recommends that Trustees be awarded $477.75 in costs. *See Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs).

### e.  Other Legal or Equitable Relief

Trustees withdraw their request for an audit for the period of September 1, 2013 to December 31, 2017. Affirm ¶ 15. Trustees make no other requests for other legal or equitable relief.

## III.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Trustees' Motion for Renewed Damages be GRANTED. The Court respectfully recommends Trustees be awarded $1,339,981.55 in unpaid contributions, $86,917.47 in interest on unpaid contributions, $267,996.31 in liquidated damages, $4,934.83 in audit fees, $2,600 in attorney's fees, and $477.75 in costs, for a total damage award of $1,702,907.91. Trustees are directed to serve a copy of this Report and Recommendation on Defendant within three days, and file proof of service with the Court.

## IV.   OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and

10

Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
April 19, 2021